# Bank *against* Donaldson.

A testator, after giving several specific devises and pecuniary legacies to his children and grandchildren, devised and bequeathed all the remainder of his estate, real and personal, to his son, " he to pay all my debts; to pay my daughter E., and all my other bequests." Held, that the legacies were charged upon the real estate thus devised to his son, and were entitled to be paid out of the proceeds of the sale of the land by the sheriff, as the property of the son, in preference to his lien creditors.

If a legatee connives at or becomes a party to a transaction which constitutes a *devastavit* on the part of an executor, he will not afterwards be permitted to take the amount of his legacy out of the assets of the estate to the prejudice of creditors, legatees or persons interested, who are likely to suffer by such *devastavit*.

ERROR to the Common Pleas of *Union* county.

William Donaldson and Anna Maria, his wife, against the West Branch Bank and the Bank of Pennsylvania. Mary Bradford against the same; Sarah Jane Bradford against the same; and David Barnite and wife against the same. These were several issues directed by the court to try the right to the proceeds of the sale of the real estate of John H. Cowden.

John Cowden died, having first made his will, which was proved on the 16th January 1837, as follows : —

[Bank v. Donaldson.]

" The last will and testament of John Cowden, of the town of Northumberland, in the county of Northumberland, and State of Pennsylvania.

First, I order and direct that all my just debts and funeral expenses be paid.

Then I give and bequeath to my daughter Elisabeth $200, to be paid yearly and every year during her natural life, to commence six months after my decease.

I give and bequeath to Henry M'Quhae all that lot and buildings some time ago owned by James Black, No.　; also, on the same street, lots 345, 150, 149. To Sarah Jane M'Quhae I bequeath my little red house in Northumberland, No.　, to her heirs and assigns for ever. I also give her thirty shares in the Lewisburg bridge stock. To John M'Quhae I give and bequeath all my property on the north-east side of the street, the stone house and storehouse all along from the bridge down, to his heirs and assigns. Also I give to Henry, Sarah, Jane and John M'Quhae, all my estate in Sodom, Chilisquaque township, Northumberland county, to them, their heirs and assigns for ever, as tenants in common, not joint tenants. To my daughter Mary, her heirs and assigns, I give and bequeath my plantation in Chilisquaque township, Northumberland county, now occupied by Michael Shins; my storehouse and two lots in Northumberland, Nos.　; also $3000, to her separate and exclusive use and benefit.

To James Merrill I give Samuel Houpt's bond for $1000, with interest, due 1st April 1839.

And to George Merrill I give Samuel Houpt's bond for $1000, with interest, due 1st April 1838; also, the plantations on the West Branch that I hold in partnership with James Merrill, I give to the said George Merrill, his heirs and assigns, for ever.

To my daughter Rebecca, her heirs and assigns, I bequeath all my farm in Centre county, my place in Indiana county, my place at Newtown, State of New York; all my houses and lots in Milton, Northumberland county; the lots in Williamsport of mine they now occupy; also, my house and lot in Williamsport, lately occupied by Dr James Hepburn; and all my claims against Curts and Hepburn, for her separate and exclusive use and benefit.

To my daughter Anna Maria, her heirs and assigns, I bequeath all my plantation on the North Branch, about five miles above Northumberland; my out-lot at Danville; a small house and lot in Moorsburg; $3000; and also my claim and demand against George Grant of a mortgage entered against said Grant in Schuylkill county.

I give to each and every one of my grandchildren and great-grandchildren that I have not provided for, $500, to be paid to them and each of them upon their arriving at full age or marriage; and beside the above I give to Cowden S. Wallis, his heirs and assigns,

all my farm on Muncy Hill, adjoining C. Deimer's place; all my shares of stock in Northumberland bridge, and all my shares of stock in the Centre Turnpike Company, and one share of stock in the Bellefonte, Aaronsburg and Youngmanstown Turnpike; also, five shares in the Miners' Bank.

To my son John H. Cowden, his heirs and assigns, I give and bequeath all the remainder of my estate, real, personal and mixed; he is to pay all my debts, to pay my daughter Elizabeth and all my other bequests. It is my wish that my daughter Mary may occupy the old mansion-house just the same as if her mother, my dear good wife, was still in being, as long as she may find it convenient; also to find her with hay and pasture for a horse and cow. And I do hereby appoint John H. Cowden my executor of this, my last will and testament. In witness whereof I have hereunto set my hand and seal, this 1st day of September, A. D. 1836."

The personal estate of the testator amounted to upwards of $50,000, and was more than sufficient to pay all the debts and legacies. The real estate which passed to John H. Cowden under the residuary clause in the will was sold as his property by the sheriff, and the proceeds, amounting to upwards of $50,000, was the fund in court for appropriation.

It was claimed, pro tanto, by the plaintiffs, who are legatees in the will, on the ground that these legacies were charged and a lien upon the land; and it was claimed by the West Branch Bank, the Bank of Pennsylvania, the Manufacturers' and Mechanics' Bank, the Philadelphia Bank, and others, lien creditors of John H. Cowden.

As to the claim of Donaldson and wife, it was proved that at the time of the testator's death he held a note of Donaldson for $1000, and a note of Colt and Donaldson for $1200, and that these notes were paid by the transfer to John H. Cowden, the executor, of stock of the Williamsport Bank, after it had failed, and notes of the Tide-water Canal Company at par, which were worth about ten cents for the dollar. It also appeared that John H. Cowden had transferred to William Donaldson several judgments which were assets of the estate, for which he received stock in the Swatara Rail-road, and post-notes of the Tide-water Canal Company, neither of which were of any considerable value. These transactions were subsequent to the date of the defendants' liens against John H. Cowden. It also appeared that there was a considerable amount of assets of John Cowden's estate which were yet outstanding and in judgment, part of it in the name of John H. Cowden without the style of executor, and that attachments in the nature of an execution had been issued against John H. Cowden, and these assets had been thus attached. The attachments were served upon the garnishees alone, and not upon John H. Cowden.

The points presented to the court below for their instruction to

the jury in the case of Donaldson and wife, will be sufficient to exhibit the questions argued and determined in this court.

Plaintiff's points:

1. That the legacy to Anna Maria Donaldson is charged upon the joint fund, land as well as the personal, devised to the residuary devisee.

2. That though testator left ample personal property to pay debts and legacies, yet if the personal was not applied to the payment of the legacies, and if the legacies have not been otherwise satisfied, they remain due, and may claim and receive payment out of the proceeds of the real estate in court for distribution.

3. That the lien of the legacies on the real estate of the testator, John Cowden, is superior to that of the creditors of John H. Cowden, the residuary devisee; and the legacies are entitled to priority of payment.

4. That the legatees are entitled to payment out of the fund in court, and are not compelled first to resort to any remaining assets of the estate that have been shown.

6. That legatees have not been guilty of such laches in pursuit of their claim as will throw them off the real estate.

7. That the note due by William Donaldson to the testator at his decease was not, *per se*, a credit against the legacy to his wife; nor, unless John H. Cowden claimed it as such, with the knowledge and consent of Donaldson, can his creditors convert it into such a credit.

8. The creditors of John H. Cowden cannot force a credit of the note on the legacy against the will and intention of the husband of the legatee, and also of residuary legatee and creditor.

9. That the judgments in favour of the estate assigned by John H. Cowden to William Donaldson, are not, under the evidence, payment, *pro tanto*, of the legacy to Mrs Donaldson.

10. That payment by William Donaldson to John H. Cowden of his note to testator in stock of the West Branch Bank, the same being received and accepted by John H. Cowden as payment, is, as such, conclusive upon his creditors, and an extinguishment of the note.

Defendant's points:

1. That the legacy to the plaintiff's wife, under the admission and evidence that there was personal estate more than sufficient to pay all debts and legacies, is not a lien upon the real estate of John Cowden deceased, and the plaintiffs are therefore barred from recovery in this issue.

2. That if the said legacy is a lien, the personal estate is the primary fund to pay it, and the real estate only a collateral security, which cannot be resorted to until the personal estate be first applied.

3. That if the jury believe that there were personal assets of the estate remaining under the control of the executor at the time

the defendant's liens upon the real estate accrued by mortgage, deed and judgment, then the legacy is not a lien upon the real estate as against the defendants.

4. That the plaintiffs are answerable for any *devastavit* or diversion of the personal assets from their proper object, made with their consent, connivance or participation, after defendant's liens accrued; and that the act of William Donaldson in that respect affects the claim he makes in this action in right of his wife.

5. That if sufficient personal assets are still in the power of the executor, and secured by bond for $8000 given by order of the Orphans' Court, the plaintiffs cannot recover in this issue.

6. That the attachments pending and never served upon John H. Cowden, the executor, cannot operate upon the personal estate of the testator, so as to interfere with the claim of the legatees or creditors of the testator, if they choose to assert their rights to the same.

7. That if the plaintiffs have a lien upon two funds, (the real and the personal estate), and the defendants have only a lien upon one fund, (the real estate), the plaintiffs are bound to resort to that fund upon which the defendants have no lien.

8. That if William Donaldson individually, and also as a partner in the firm of Colt & Donaldson, was indebted to the estate of the testator at the time the defendants' lien accrued, the defendants have a right to insist upon the application of those debts to the discharge of the legacy claimed in this issue, and that they cannot be deprived of this right by any subsequent *devastavit* or waste of the said assets by giving the same up to the debtors in exchange for Tide-water Canal notes, West Branch Bank stock, and Swatara Rail-road stock, when the same were known at the time to be almost entirely worthless.

9. If William Donaldson knew of the existence of the lien of the Philadelphia Bank and others, and that John H. Cowden was insolvent at the time he participated with the executor in the said wasting and misapplication of the assets of the estate as given in evidence, then the plaintiffs in this action are chargeable with the amount of the assets thus misapplied, as an equitable defence to the present action.

WILSON (President) instructed the jury that the testator, by blending his real and personal estate for the payment of his debts and legacies, thereby charged his lands with the payment of his legacies; and that the fund now in court must be first applied to their payment, and that the legatees were not bound to relinquish their claim upon it because there were other sources from which by possibility they might recover.

If William Donaldson was indebted to the testator at the time of his death, which continued until the liens of the defendants attached, and he then concerted with the executor and remaining legatees and devisee to divert that fund which was a portion of

the assets of the testator, and liable to the payment of debts and legacies of the testator, he would be affected to the amount of that indebtedness, provided you are satisfied that Donaldson knew John H. Cowden was insolvent at the time, and that it was done for the purpose of diverting that fund from the legitimate administration of the estate. It would be a devestment of so much of the estate committed to his care and trust as executor, and Mr Donaldson would be answerable for that amount, and that may be deducted out of the claim he seeks to recover in this issue. Donaldson had the power to refuse payment of this note, and might have claimed to settle it as a part payment of the legacy of his wife. When, then, he could have set off and saved that amount of what he now claims out of this fund in the right of his wife, and you are satisfied that the plaintiff concerted with the executor to divert this fund from the legitimate course of its administration, to the prejudice of the rights of others, he may be charged.

I look upon the transfer of the stock in the Williamsport Bank in payment of a note of individual indebtedness of Donaldson to the testator, in a different situation from the note of Colt & Donaldson, and the transfer of the judgments by John H. Cowden to Donaldson. This note of Colt & Donaldson was not a separate liability; it would not of itself be a payment of so much of the legacy. Mr Colt had control of it as well as Donaldson, and for Colt's acts Donaldson should not be made to suffer, particularly when it is made to interfere with the rights of his wife's bequest or legacy which she is to receive from the estate of her father, and which Donaldson may refuse to control and make his, but suffer it to remain for her use. If this was a misapplication of the funds of the testator, it is to be visited on those who engaged in it; and if not settled to be accounted for as a part payment of the legacy, and so consented to by Donaldson, it could not be set off in this suit against the legacy. What is the testimony? Mr Colt swears that he did not communicate it to Donaldson. Mr Cowden swears that he had no understanding with Donaldson on the subject. Now, if they are believed, and they are the witnesses called by the defendants to prove it, and which they cannot ask to be discredited, having so called them, what evidence is there from which you can infer that Donaldson consented to the payment of this sum in part payment of Mrs Donaldson's legacy? Why, Mr Colt swears that he gave a consideration for the note, and that he will in his settlement with Mr Donaldson charge him with its payment; it is immaterial what that consideration was, if the transaction was between Mr Colt and Mr Cowden. We are not now trying whether Mr Colt, who lifted the note, can be pursued for the amount of it. Under the evidence given, (and all that has been given of this transaction is by the defendants), we do not think, in point of law, that this sum can be the subject of set-off in this suit.

[Bank v. Donaldson.]

*Maynard, Greenough* and *Bellas,* for plaintiffs in error. It is one of the admitted features of this case that the personal estate of the testator was more than adequate to the payment of all charges (debts and legacies) upon the estate; and it is clearly settled that personal estate is a primary fund for that purpose. 2 *Johns. Ch.* 614; 3 *Vez.* 735; 5 *Vez.* 359; 1 *Serg. & Rawle* 453; 3 *Johns. Ch.* 318; 9 *Vez.* 447; 1 *P. Wms.* 505–518; 2 *Salk.* 416. It being therefore contrary to legal policy to charge land with the payment of legacies, it has been held that there must be a clear intention of the testator expressed in order to charge his land. 8 *Watts* 198; 3 *Watts & Serg.* 370; 4 *Watts & Serg.* 423; 6 *Am. Com. Law* 420; 8 *Conn. Rep.* 5; 10 *Wheat.* 229; 3 *Vez.* 738; 5 *Conn. Rep.* 536. It was clearly proved that the executor was guilty of *devastavit,* and as clearly that Donaldson was aiding and assisting him; he had the means of payment of his legacy in his own hands, and, instead of applying it to the payment of his legacy, he enters into a scheme with the executor to commit a *devastavit* with it. Under such circumstances, he cannot now be permitted to recover. 11 *Serg. & Rawle* 397; 4 *Yeates* 74; 15 *Serg. & Rawle* 78; 1 *Watts* 440; 5 *Serg. & Rawle* 452; 13 *Serg. & Rawle* 157; 7 *Watts* 79.

*Pleasants* and *Hepburn,* for defendants in error. It is clearly settled that where a testator blends his personal and real estate for the payment of legacies, he thereby makes them chargeable upon his land. 6 *Binn.* 395; 2 *Binn.* 525; 1 *Penn. Rep.* 96; 13 *Serg. & Rawle* 354; 6 *Watts* 85; 17 *Serg. & Rawle* 13; 2 *Dall.* 131; 3 *Yeates* 299. The legacy was to the wife of Donaldson, and his right over it was a matter of choice; he might elect to take it or not, and, until he made it his own by some act reducing it to possession, it remained the legacy of his wife; and if he had died before this issue was formed, no act, even of wrong in assisting or partaking with the executor in a *devastavit,* could prejudice the right of him, who survived him, to recover. 2 *Watts* 90; 10 *Watts* 54; 11 *Serg. & Rawle* 325, 410; 1 *Whart.* 184. It cannot be said that he now claims, but she is obliged to use his name to recover her own personal right. 2 *Serg. & Rawle* 293; 4 *Rawle* 480.

The opinion of the Court was delivered by

SERGEANT, J.—We are of opinion that there is no error in the decision of the court below that the legacies were a charge upon the lands, and payable in the manner pointed out by them.

But we are of opinion that the court erred in that part of the charge which relates to the legacy claimed by William Donaldson, and his transactions with John H. Cowden in taking from him the property and assets of the estate. The court ought to have charged the jury expressly that these transactions constituted a

VII.—2.K*

[Bank v. Donaldson.]

*devastavit* on the part of the executor, to which William Donaldson was a party, and that therefore he cannot be allowed thus to carry off the property of the estate for a nominal consideration, or for things of little or no value; but equity will follow them into his hands, and make him restore them, when the executor becomes insolvent, and creditors, legatees and persons interested are likely to suffer by it. Were the matter between the executor, J. H. Cowden, and William Donaldson alone, it might be all well enough; but when others are likely to suffer by it, the case is very different. The rule on the subject is stated in 4 *Madd. Rep.* 357, cited 1 *Story's Equity,* that every person who acquires personal property by a breach of trust or *devastavit* by the executors, is responsible to those who are entitled under the will, if he is a party to the breach. So it is laid down in *Ram on Assets* 489, and supported by numerous authorities, that it is a cause of interference in equity if there is some fraud or collusion between the executor and alienee, as if the alienee is a party consenting to and contriving a *devastavit*, or if, in the case of a sale, it is made at a nominal price or fraudulent undervalue. That such was the case here, the evidence seems to leave no room to question, in regard as well to the note to Donaldson alone, as to Colt and Donaldson, which was a debt of Donaldson by the partnership arrangements, and which Colt could not settle otherwise than for him; and also to the judgments assigned, all of them for notes or stock of little or no value. And the estate being now insolvent, and these assets required, the creditors, legatees and others interested have a right to pursue them.

We are of opinion that the court below erred in not instructing the jury, that if the amount of the assets thus transferred exceeded the amount due on the legacy, they were a bar to it, and that the plaintiff could not recover.

Judgment reversed, and *venire facias de novo* awarded.

In the other cases, viz., *Same* v. *Bradford, Same* v. *Same*, and *Same* v. *Barnitz and wife*,

Judgment affirmed.