# Nagle's Appeal.

Testator devised his estate to his widow during widowhood, and directed his executors, after her decease, if the majority of his children agreed, to sell the land and pay a debt out of the proceeds. Out of the proceeds he directed his executors to pay a certain sum to each of his children, and to pay them the residue in three years thereafter. Held, the conversion did not take place until a sale by consent, after the death of the widow; that the husband (and administrator) of one of the testator's daughters, dying in the life time of the widow, was not entitled to receive the legacy, or the share of the residue, out of the proceeds of the sale.

FROM the Orphans' Court of *Philadelphia.*

April 1.—Fernster, by his will, proved in 1836, devised all his estate to his wife during widowhood; "at her decease it is my desire, if the majority of my children be agreed, that my executors shall sell all my real estate, (the house in Market street excepted, which house I would not wish to be sold until three years after my wife's decease, if the majority of my children be agreed,) and give unto my son John $500, money borrowed from him." He then directed his executors to give $500 to each of his seven children, out of the proceeds of his real estate, and directed the residue to be equally divided between them, in three years after receiving the $500. If any of the children did not make a good use of the $500, the executors were to keep the residue, to administer it as their necessities required.

Mary Nagle, one of the testator's children, died in 1845, leaving a husband, who administered to her estate and four children.

In 1847 the testator's widow died. After her death, the executors, under an agreement of the majority of the children, sold a portion of the real estate, and the question arose on its distribution.

The *administrator* of Mary Nagle claimed the fund as personalty, but the auditor awarded it *to her children*, for the following reasons:

The general principle, which is established by the cases cited, is, that to convert real or personal property from the state in which it is found at the death of a testator, the will must direct it absolutely and without qualification, irrespective of contingencies and independently of all discretion.

*Leigh and Dalzell on Equit. Conv.* 15; *Newland on Contracts,* 54; 2 *Kent Com.* 230, (note); 2 *Story's Equity, sec.* 1214; Wheldale *vs.* Partridge, 5 *Ves.* 388; and *Id.* 8 *Ves.* 227; Wright *vs.*

Trustees of Meth. Epis. Church, 1 *Hoff.* 203; Clay *vs.* Hart, 7 *Dana*, 11, Henry *vs.* McCloskey, 9 *Watts*, 145, is directly in point, and rules this case.

In Reinhart *vs.* Harrison, *Bald.* 184, relied on by the administrator, the testator devised his real estate to his executors, and directed them to apply the rents and profits to specific purposes, until Joseph H. White should attain, or, in case of his death, might have attained the age of twenty-one years, and after said time, then to sell and divide the proceeds among certain residuary legatees.  BALDWIN, J. says: "The time of sale is fixed, the direction to sell is absolute, the only contingency on which it depends is as to time; so that no event can occur or intervene to prevent the distribution of the proceeds among the residuary legatees as tenants in common."  There was, therefore, in this case, no qualification annexed to the sale, as that it should be with the agreement of the widow, or of the majority of the children, upon the non-concurrence of either of which contingencies, if annexed, no conversion would, as your auditor conceives, have taken place.

Your auditor is, therefore, of opinion, that the interest of Mary Nagel in the estate of her father, was, at the time of her death, real estate, and as such descended to her children; and as there can be no tenancy by the courtesy of a remainder or reversion vested in the wife, if the particular estate continue till the death of the wife, they are entitled to her share absolutely.  Chew *vs.* Commissioners of Southwark, 5 *Rawle*, 150.

*W. H. Rawle* and *J. Clark Hare* for the appellant.—The decree is plainly wrong as to the $500 legacy, which was vested in the daughter immediately on the death of the testator, and hence passed to her administrator, otherwise it would lapse for the benefit of the other legatees.  If it is said this is contingent on assent, what matters it, for there has been an assent to this sale.  But the assent was intended to extend only to the quantity and time, and not to work a destruction of the legacies or trusts, otherwise a partial intestacy is produced, contrary to a fundamental rule, and the testator is made to put his bounty in the power of a majority of his children.  But if a mere power, and not a trust, it being essential to a right of property vested, or intended to be vested, is considered as done because it ought to be done, and the conversion was immediate and absolute, otherwise all the provisions for debts and legacies are wholly contingent, which distinguishes the case from Henry *vs.* M'Closkey.  That actual conversion is postponed is immaterial, if it must ultimately take place.  *Bald.* 166, 177: 2 *Rawle*, 185; 13 *S. & R.* 330.  Now the authorities are clear, that where the plain general intent requires an act to be done, it is never allowed to be controlled or defeated by a particular intent, drawn only from words of discretion, given to trustees

or others appointed to carry out that intent.  2 *Keen*, 653; 5 *Beav.* 51; *Amb.* 341; 1 *Dow*, 361; 1 *Ves.* 169; 10 *ib.* 129, 137; 4 *Mad.* 484; 4 *Hill*, 492.

*Price* for the children of Mrs. Nagel.—This was but a naked power, and in the meantime the estate descended.  *Act* 1834, *sec.* 13; 5 *Wh.* 551; 3 *P. L. J.* 207; 4 *ib.* 93.  But there could be no exercise of the power until the event of the widow's death happened, and then it was contingent on the assent of a majority of the children.  Until the contingency happened there was no conversion, and in the meantime the estate vested, 9 *W.* 145, and the death of the children defeated the power.  1 *Sug. Pow.* 334.

The opinion of the court was delivered by

BELL, J.—The authorities, English and American, referred to by the auditor in his report, fully justify the conclusions he attained, under the aspect the case assumed when before him.  Indeed, Henry *vs.* McCloskey, in its features and the object of the contest very like the present controversy, would seem to leave no room to question the immediate applicability of the principle, that equitable conversion only takes place where a deed or will, positively and absolutely directs a sale of realty; and this cannot be where the exercise of the power is made to depend on future contingency; at least, until the sale is effected.  As that report is portion of the record and will be published as part of the case, it is unnecessary to repeat, here, the reasoning upon which it proceeds.  It is, perhaps, enough to say we approve it, so far as it goes.  Since then, another cause has been decided in this court, reiterating and enforcing the doctrine on which the auditor rests his decision.  I allude to Bleight *vs.* The Bank, 10 *Barr* 131.  It is, there, repeated that "to change real into personal estate, it is essential that the direction to convert be positive and explicit; that the will, if it be by will, or the deed, if it be by contract, decisively fix upon land the quality of money;" and the cited authorities shew this to be an old and familiar rule.

But the appellant argues that the clauses, in our will, "if the majority of my children be agreed," refer simply, to the amount of real estate to be sold at the death of the testator's widow, and are not to be regarded as a condition attaching upon and restraining the power itself.  Before the auditor, it would seem, he insisted these clauses have in view the time when the share of each child was to be enjoyed, and are without operation upon the nature of the interest given.  But neither of these positions are tenable.  It is impossible to read the devise in question, without at once perceiving a manifest intention that the exercise of the power to sell was to depend on the decision of a majority of the children, after the death of their mother.  Why the testator re-

quired this assent, as preliminary, I may say, repeating the sentiment of Mr. Justice KENNEDY, in Henry *vs.* McCloskey; it is not for us to determine. The fact that the other provisions of his will might have been more easily carried into effect after a sale, certainly furnishes no sufficient reason for altogether disregarding a condition so important and imperative. It is not to be doubted the testator contemplated a sale of his real estate as more than probable, and accordingly, provided for the event by vesting his executors with discretionary authority over a portion of the fund, under certain circumstances. A refusal by the children to sanction a sale, might have defeated this power of supervision by declining to give existence to the object of it. But this was a result of the contingency, upon which the whole disposition was made to depend, which, by involving a failure of actual conversion, possibly, also involved a failure of the consequent authority.

There is no force in the suggestion that this contingency is not such an one as ought to suspend conversion, since it amounts to nothing more than the right to elect cast upon all having an interest in a converted estate, which exercised, will prevent the interposition of equity to effect actual conversion, against the wishes of the *cestui que* trusts. But there is a wide difference between giving assent to a power of sale, without which it is wholly inoperative, and defeating an existing power by electing to take the subject of it in specie. In the former instance the nature of the property remains intact until assent; in the latter it is converted until election made. Besides, election to be effectual, must be by all the beneficiaries; the assent here required is of a majority.— Whether after the deaths of two of the devisees, the survivors, or a majority of them, could give effective assent, is not now made a question. It suffices for our present purpose that, until sale actually made, the property remained unchanged.

Another idea advanced in the argument is, that this was a power coupled with a trust, which equity would not suffer to be defeated either by the supineness of the trustee, or the obstinacy of third persons. It is, unquestionably true, that where a power is in the nature of a trust, that is, where its execution is essential to give effect to rights of property, vested or intended to be vested in others, its fulfilment is regarded as a duty which may be compelled, and of course, the subject will in the meantime, be impressed with the incidents of equitable conversion. But there is no room for the operation of this rule where the beneficiaries are themselves clothed with the privilege of decision, not to defeat the estate of any one of them, but to determine the shape in which it shall vest in possession, and I imagine this is the first attempt to apply the principle invoked in coercion of a *cestui que trust*, invested with the discretion of determining whether a conversion shall have place or not. Such distortion of a will, intended to be protective of parties

having an actual interest, instead of promoting the intention of the donor, would be in utter contempt of it, and destructive of all conditions, such as obtain in this will.   The application of it now attempted, certainly was not thought of in Henry *vs.* McCloskey, Bleight *vs.* The Bank, or Boshart *vs.* Evans, 5 *Wh.* 551, a case also vesting in a contingent direction to sell, in which it was held that "until the contingency happens the executors have no control over the estate, nor any interest whatever in it."

It has also been urged upon us that, by the subsequent direction to pay a debt and legacies out of a fund arising from a sale of the realty, is necessarily given a power to sell, for the purpose of raising that fund, which there is nothing to qualify or render contingent.   It would be difficult to support this proposition in face of the express provision, that a sale has only to be made in the event of the assent of those who otherwise would take the land.   It may be that where a sale is absolutely required to effectuate a well ascertained paramount intent, that otherwise would be frustrated, the necessity will afford a controlling reason in the construction of the instrument creating the power.   But there is no such overruling necessity here.   As for the so called legacies, they represent but the value of the land which, unsold, goes to the legatees.   Of the $500 directed to be paid to the testator's son John, as a debt due him, it may be observed, that is not, of course, payable out of the land devised, since the personalty is the primary fund for the payment of debts, Watkin's estate, 3 *R.* 239 ; Hoover *vs.* Hoover, 5 *Barr.* 356.   But with us, so far as the present question is involved, an express change works no effect beyond what is produced by the simple operation of our law, making lands in all cases assets for the payment of debts.   Had John proceeded at law for the recovery of his debts by sale of the land, it will hardly be pretended it would have worked a conversion out and out.   Nor would a sale for the same purpose, by force of the testamentary direction, be of greater efficacy in producing such a result, as is shown by the masterly argument of Mr. Scott, afterwards Lord Eldon, in Ackroyd *vs.* Smithson, 1 *Bro. C. R.* 437, upon which Lord Thurlow based his decree.   The Chancellor said, he used to think, when it was necessary for any purpose of the testator's disposition, to convert the land into money, that the undisposed money would be personalty, but the case fully proved the contrary.   This was said in a case where a testator, after giving several pecuniary legacies, imperatively ordered his real and personal estate to be sold for ready money, his debts and legacies to be paid out of the proceeds, and the residue (if any) to be paid to the several legatees, in proportion to their respective legacies.   Two of the legatees having died, living the testator, it was declared their shares, so far as they were. constituted of personal estate, should go to the next of kin, and so far as they were of the real estate, to the heir

at law, by way of resulting trust; and Digby *vs.* Legard, (stated in note to Cruise *vs.* Bailey, 3 *Pr. Wms.* 22,) to the same effect, was cited with approbation.

These cases are, it is true, not entirely parallel with the present, but they are with others of the same import, authority for, and illustrative of a principle, which is decisive of this part of the argument. It is, that a sale to effect some of a testator's objects, will not of necessity work a conversion of the whole subject of the sale, unless it be manifest such was the design of the testator, irrespective of ulterior chances. The result of the authorities, as stated by Mr. Cox, in his note to Cruise *vs.* Bailey, (*supra*) is, that the question of conversion, out and out, depends on whether the testator meant to give to the produce of real estate, the quality of personalty to all intents, or only so far as respected the particular purpose of the will; for, unless he has sufficiently declared his intention, not only that the realty shall be converted into personalty, for the purposes of the will, but further, that the proceeds shall be taken as personalty, whether such purpose take effect or not, the realty, or its produce may continue to be impressed with the character of land. The authorities from which he deduces this doctrine, to be sure, have relation to lapsed bequests, but I take it, the principle is equally applicable where, from any cause, conversion to meet the exigencies of a will, is prevented.

Perhaps, however, it was unnecessary to glance at this branch of learning, since our own adjudications teach us that where, as here, conversion is made to depend on a future, uncertain event, and one of the beneficiaries in the mean time dies, the quality of his interest will not be changed by a subsequent sale, except when the testator has so distinctly willed it.

Decree affirmed.