## Scott's Estate.

*Will—Conversion—Presumption—Blending of real and personal estate.*
The presumption is against conversion by will, which is a legal fiction introduced on equitable principles to effectuate the intention of the testator.  It is only to be resorted to when actually necessary to carry out the testamentary purpose.  A direction to convert must be positive and the instrument resorted to must decisively fix on the land the quality of money.  The direction to sell must be imperative and explicit.  If it be contingent on the election or consent of the legatee or devisee or other person than the executor, such power of sale does not work a conversion, even where the will provides for a payment of legacies and distribution of the remainder of the fund.  And this is so although the contingency on which the sale depends may never arise.
Testator directed "that at any time after the decease of my wife, my said executors may be required by a majority of those having an interest therein to dispose of all that portion of my real estate on which I now reside, together with all the personal estate then having properly belonged to my said wife, and divide the proceeds of such sale in manner and proportion as follows:"  He further directed that if his wife died prior to his youngest son arriving "at the age of twenty-one years, said sale and distribution shall not take place until that period shall have arrived."  *Held*, that the direction to sell did not operate to produce a conversion at the death of the testator, and no conversion

occurred until the real estate was sold by the direction of a majority of the surviving children.

Argued April 14, 1908. Appeal, No. 8, April T., 1908, by John H. Scott, from decree of O. C. Allegheny Co., Dec. T., 1906, No. 70, dismissing exceptions to adjudication in Estate of John Scott, deceased. Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ. Affirmed.

Exceptions to adjudication.

From the record it appeared that testator by his will directed as follows:

"And I further will and direct that at any time after the decease of my wife, my said executors may be required by a majority of those having an interest therein to sell and dispose of all that portion of my real estate on which I now reside together with all the personal estate then having properly belonged to my said wife, and divide the proceeds of such sale in manner and proportions as follows, viz.:

"To each of my sons George, and Wilson, one thousand dollars and to each of their sisters Clara and Seeneth the same amount that had been awarded to each of their elder sisters under the first distribution as above directed, and in the event of there being a surplus over and above the said distribution as above directed, I order and direct that said surplus be equally divided amongst all my children that may be then living, and I further order and express as my will that in the event of my beloved wife being removed by death, previous to the time at which my youngest son would have arrived at the age of twenty-one years said sale and distribution shall not take place until that period shall have arrived.

"My oldest sons Samuel and James being already provided for they are not to be held as having any further interest in my estate except as in the contingency above provided for."

The sale of J. Harvey Scott's interest was made under execution to one Peter Ivory. All of the children named in the will survived the testator, and all but one of the children survived the widow. The property was sold at the instance of the children on March 23, 1906.

The court held that there was no conversion until actual sale of the land, and that the interest of J. Harvey Scott was subject to the Ivory judgment.

*Errors assigned* were in dismissing exceptions to adjudication.

*W. H. S. Thomson,* with him *Frank Thomson,* for appellant.— When a testator by his will blends his real and personal estate, so as to show that he intends to create a common fund, and to bequeath that fund as money, an intention to work a conversion of the real estate will be implied: Burr v. Sim, 1 Wharton, 252; Paist's Appeal, 1 Monaghan, 523; Marshall's Estate, 147 Pa. 77; Roland v. Miller, 100 Pa. 47; Hunt's Appeal, 105 Pa. 128.

Where the will cannot be fully executed, without making sale of the property, an equitable conversion will be considered to have taken place, though there is no positive direction to sell: Rose's Estate, 19 Phila. 98; Fahnestock v. Fahnestock, 152 Pa. 56.

*G. C. Lewis,* with him *George W. Flowers,* for appellees.— As to the alleged conversion caused by the blending of the real and personal estate of the testator, it is not every mixture or blending of the two kinds of estates that will, in the absence of an express direction to sell, work an equitable conversion. It must be such a "blending of the real and personal estate as to show that the testator intended to create a common fund out of both real and personal estate and to bequeath the fund as money:" Hunt's Appeal, 105 Pa. 128; Marshall's Est., 147 Pa. 77; Roland v. Miller, 100 Pa. 47; Perot's App., 102 Pa. 235; Sauerbier's Est., 202 Pa. 187; Caldwell v. Snyder, 178 Pa. 420.

In the absence of express and imperative direction to sell, a power of sale or direction to sell, if contingent upon the consent of the beneficiaries or contingent upon the election of some other person than the executors, will not work an equitable conversion, even although the proceeds of such sale are directed to be distributed in unequal proportions; or to the payment of

certain specific legacies, and distribution of the remainder: Nagle's Appeal, 13 Pa. 260; Anewalt's Appeal, 42 Pa. 414.

OPINION BY HENDERSON, J., August 00, 1908:

The question here is whether an equitable conversion was effected by the will of the testator at the time of his death or whether such conversion occurred when the real estate was sold by the direction of the surviving children. The presumption is against conversion, which is a legal fiction introduced on equitable principles to effectuate the intention of the testator. It is only to be resorted to when actually necessary to carry out the testamentary purpose. A direction to convert must be positive and the instrument resorted to must decisively fix on the land the quality of money. The direction to sell must be imperative and explicit: Henry v. McCloskey, 9 Watts, 145; Boshart v. Evans, 5 Whart. 551; Bleight v. Bank, 10 Pa. 131; Nagle's Appeal, 13 Pa. 260; Stoner v. Zimmerman, 21 Pa. 394; Anewalt's Appeal, 42 Pa. 414; Neely v. Grantham, 58 Pa. 433; Leiper v. Thomson, 60 Pa. 177; Jones v. Caldwell, 97 Pa. 42; Sauerbier's Estate, 202 Pa. 187. If it be contingent on the election or consent of the legatee or devisee or other person than the executor, such power of sale does not work a conversion, even where the will provides for a payment of legacies and distribution of the remainder of the fund: Nagle's Appeal, 13 Pa. 260; Anewalt's Appeal, 42 Pa. 414. And this is so although the contingency on which the sale depends may never arise. The will under consideration does not contain a positive and absolute direction to sell, and it cannot be contended that a conversion took place because of an express command. It is argued, however, that a conversion is implied from the fact that the testator blended real and personal estate and thereby created a fund from both which he disposed of as money; and further that the will could only be given effect by a sale of the land and that a conversion arose from this necessity. As to the first proposition it may be said that no personal estate of the testator is authorized to be sold, nor is any fund composed of the proceeds of real and personal prop-

erty provided for. The reference to personal estate is to "all
the personal estate then having properly belonged to my said
wife." Just what the testator meant by that language is not
clear, but it certainly does not give us any support for the con-
clusion that it is a bequest of any part of his own property.
If, however, the direction were applicable to the testator's
own estate it would rather indicate an intention to dispose of
his personal property in the same proportions as he provided
for in the case of the real estate.

We are not convinced that the provision for distribution
of that part of the estate in question necessarily and absolutely
implies a conversion. The testator evidently understood the
convenience of a sale as an aid to a division, but he very clearly
and plainly made the power to depend on the decision of a
majority of those entitled to share in that part of his estate
and it is only by such consent that vitality could be imparted
to the power. If he intended to provide for an unqualified sale
we must assume that he would have done so. It does not
follow, however, that intestacy would result from his fail-
ure so to do. In Caldwell v. Snyder, 178 Pa. 420, there was a
power of sale in the executors, subject to the agreement of the
wife and a majority of the heirs of the testator. It was there
held that notwithstanding the power of sale a right of parti-
tion existed as there was no conversion and the power of sale
could only be called into life by the agreement of the widow and
heirs. In that case the devisees took unequal shares by rea-
son of advancements and the widow also had an interest, but
neither of these was considered an obstacle to partition. In
like manner the interests of the devisees here might have been
ascertained. We are unwilling to hold that the minority of
those entitled to take could be deprived of their estate by the
refusal of a majority to move the executors to make the sale.
It is a more satisfactory view of the will that the testator
provided this method of dividing the estate if the persons to
whom it was devised chose to adopt it. But in the absence
of such election they were left to their interest in the land.
We do not consider Fahnestock v. Fahnestock, 152 Pa. 56,
cited by the appellant, an authority for the position contended

for. In that case there was provided an express authority to sell all the real and personal estate of the testator at public or private sale and to execute deeds for the real estate. This of itself would not have been sufficient because of the absence of a direction to sell, but it was considered from the whole face of the will to be the intention of the testator to provide for a conversion. The executors were given extensive authority; were created trustees as to part of the estate; were authorized to make investments in mortgages or other securities, collect the interest or income, pay over the same, and as to one of the legatees a spendthrift trust was created. In view of these provisions the court was of the opinion that it was impossible to comply with certain requirements of the will without a conversion of the real estate. The facts are very different from those presented for our consideration and lead to a very different legal conclusion. Nor is Allison v. Wilson's Executors, 13 S. & R. 330, pertinent, for in that case there was an undoubted conversion by the will. The command to sell did not depend upon any contingency or condition independent of the executors. The power of sale in the will which we have before us depended for its efficiency on the action of a majority of the testator's children living at the time of the sale. It was contingent, therefore, and did not operate to produce a conversion at the death of the testator. It follows that the interest of J. Harvey Scott was subject to the Ivory judgment and that by the sale the defendant's interest was divested. The decree of the orphans' court is in harmony with the law applicable to the case and is affirmed.