## White's Estate

*J. Boyd Landis*, for exceptant.

*Joseph L. Kramer*, for claimants.

*Mark E. Garber*, for accountant.

REESE, P. J., July 17, 1945.—The decedent, Elizabeth F. White, died testate on February 23, 1943, and letters testamentary were duly issued. The executor ultimately filed an account, which showed that he had received $715 on personalty and $1,950 on the sale of the only tract of real estate owned by the decedent at her death. The account revealed expenditures of $877.06, leaving a balance for distribution of $1,778.16. The latter sum, of course, is the balance realized from the sale of real estate.

The executor filed with his first and final account a statement of proposed distribution, which first proposed to pay, in its entirety, a judgment entered by John Sennett against the decedent in her lifetime in the sum of $900, with proper interest thereon from January 15, 1942. This judgment, entered January 14, 1939, was a lien on the decedent's real estate at the time of her death, and under section 15 (*g*) of the Fiduciaries Act of June 7, 1917, P. L. 447, continued to be a lien on the real estate or proceeds thereof for a period of five years after the decedent's death. The executor was therefore correct in proposing that this judgment be first paid out of the proceeds of the real estate.

After the payment of the Sennett judgment there will be left for distribution a little over $700. The executor proposed to distribute this, pro rata, among J. R. Shulenberger, an undertaker, Dr. E. S. Kronenberg, a physician, and the Carlisle Hospital. The

creditor Shulenberger was the only one of the three creditors here involved who continued the lien of his debt. On February 3, 1944, within a year from the decedent's death, Shulenberger filed a suit against her executor and the action was indexed against the decedent and against the executor in accordance with the provisions of section 15 (a) of the Fiduciaries Act, and ultimately judgment was entered in his favor on April 5, 1944, in the sum of $577.95.

The executor filed his petition to sell the decedent's real estate for the payment of debts on February 29, 1944. The real estate was sold to the decedent's daughter and her husband for the sum of $1,950, and this sale was confirmed on April 18, 1944. It will be observed that the proceeding to sell the decedent's real estate was instituted more than one year after her death.

The creditor Shulenberger has filed objections to the distribution proposed by the executor, and claims that the entire debt due to himself should be fully paid out of the balance for distribution after payment of the Sennett judgment. Shulenberger's contention is based on the theory that when the real estate was sold his judgment and that of Sennett were the only liens against the real estate, and that the liens of the debts due the physician and the hospital, not having been continued within a year from the decedent's death, had ceased to be liens when the real estate was sold and that these creditors are, therefore, not entitled to any share of the proceeds upon the sale of the real estate. The physician and the hospital contend that the distribution proposed by the executor is correct on two grounds: First, that the will of the decedent worked an equitable conversion of the real estate; or, second, that the debts were a charge on the real estate and that consequently the fund for distribution must be treated and distributed as personal property and that Shulenberger gained nothing by his attempt to preserve his lien.

To answer the questions thus presented, it is necessary to examine the decedent's will. The first para-

graph directed the payment of all her debts and funeral expenses. The second paragraph states: "It is my desire that the Insurance that I now carry, which is made payable to my daughter Ilene O. Campbell be used together with any cash I may have on hand or on deposit in any bank be used to carry out the directions under item #1." The third paragraph provided that if any balance remained "after payment of the above, the said balance shall be used in payment of any debts that may be against the Real Estate." The fourth paragraph directs "my executor to arrange so as my Daughter Ilene O. Campbell may have a life Estate in any Real Estate I may own. My daughter shall keep the property or properties in good repair, pay all taxes, and any other just debts against the property or properties shall be paid by Ilene O. Campbell." The fifth paragraph provided that, if for any reason the executors shall be obliged to sell the real estate in order to carry out the above directions or find that the daughter fails to carry out as the decedent directed her, the same should be sold and all debts paid; and that the balance of the money from the sale of the real estate shall be placed in trust for Ilene O. Campbell in the Carlisle Deposit Bank & Trust Company. The sixth paragraph provided that if for any reason the Campbells shall be separated, either by death or otherwise, the real estate or trust fund should be transferred to Ilene O. Campbell 30 days after such date for her sole use. In the seventh paragraph the testatrix directed that if her daughter should die before the directions of the will were completed all real estate, personal property, or trust fund should be divided share and share alike among the daughter's children. The eighth paragraph was a residuary gift to the daughter, Ilene, of "the rest, residue and remainder of my estate, real, personal, or mixed".

The first question to be decided is whether or not the will worked an equitable conversion. It is now well settled that conversion is always a question of intent and in order to work a conversion there must be either (1) a positive direction to sell; or (2) an absolute necessity to sell in order to execute the will; or (3) such a blending of real and personal estate of the testator in his will as clearly to show that he intended to create a fund out of both real and personal estate and to bequeath the said fund in money: Suppes' Estate, 322 Pa. 385. In the present will there does appear a direction to sell real estate, but only in the event that some other method of paying debts should fail. In other words, the direction to sell real estate is based on a contingency. A testamentary direction to sell real estate, to produce a conversion, must be positive and explicit, and irrespective of all contingencies: Becker's Estate, 150 Pa. 524. To the same effect is Peterson's Appeal, 88 Pa. 397. In that case there was a contingency which might have prevented a sale of any part of the real estate during a life estate given to the testator's children, and it was held that there was no conversion. In the case before us there was a contingency which could have prevented a sale of the real estate during the life estate given to the daughter of the testatrix. In other words, if the daughter had taken care of the debts as suggested by her mother, this would have prevented a sale of the real estate. It was also held in Anewalt's Appeal, 42 Pa. 414, that to establish a conversion of land into money under a will, the sale must be absolutely directed irrespective of all contingencies. In Jones v. Caldwell, 97 Pa. 42, the court said (p. 45):

"In order to work a conversion, however, the direction to sell must be positive and explicit. It must not rest in the discretion of the executor, nor depend upon contingencies. A direction to sell upon a future con-

tingency does not effect an equitable conversion until an actual sale. . . ."

The following pertinent language appears in Yerkes v. Yerkes, 200 Pa. 419, 423:

"The doctrine of equitable conversion . . . is a fiction therefore invented to sustain and carry out the intention of the testator or settlor, never to defeat it. Its application requires constant watchfulness to guard against the tendency to become a formal rule de jure without regard to its real purpose and necessity. It should never be overlooked that there is no real conversion, the property remains all the time in fact realty or personalty as it was, but for the purpose of the will so far as it may be necessary, and only so far, it is treated in contemplation of law as if it had been converted. . . . The presumption therefore, no matter what the form of words used, is always against conversion, and even where it is required it must be kept within the limits of actual necessity."

It is then pointed out in the case cited that the testator therein did not contemplate any change in the nature of his property except in certain events, which were future and contingent. He first left his entire estate to his widow for life, "she paying all taxes, water rent, and expenses of repairing", thus indicating his expectation that it should continue realty. The will thereafter provided for sale of the property in the event of the marriage of the widow, and the court concluded (p. 424):

"An examination of the general scheme of the will makes it reasonably clear that he meant to give the land, as land, to his widow for life . . . But if the widow should remarry, a complication would arise, but even without that a sale might be for the general advantage, and therefore he gave the direction to sell. But the direction was only intended to meet one or other of these contingencies."

As in the case last cited, an examination of the general scheme of the will now before us makes it reasonably clear that the testatrix herein meant to give her land, as land, to her daughter for life, but if her directions to her daughter as to the payment of debts were not followed then the land should be sold and the debts paid.

Nor was a conversion effected because the will reveals an absolute necessity to sell in order to execute it. In the first place, the will reveals that there was no necessity to sell the real estate if the daughter had complied with the decedent's desire that her personal estate and the proceeds of insurance should pay her debts. In the second place, no such necessity appears on the face of the will, for the reason that the law itself would have required the sale of the real estate if the debts were not otherwise paid.

Nor can we find any conversion because the will provided for such a blending of real estate and personal estate as clearly to show an intention to create a fund out of both real and personal estate and to bequeath the fund in money. True, the will contained a residuary clause which blended real and personal estate, but we cannot imply a blending for all purposes as working a conversion in face of a specific devise of a life estate in the real estate in question to the daughter: Hackett's Estate, 44 D. & C. 593, 598. Moreover, the residuary clause was entirely ineffective and unnecessary, because the sixth and seventh paragraphs of the decedent's will effectively disposed of all her remaining estate to her daughter. Lastly, the mere blending of real and personal estate, without a clear and indubitable intent to create a common fund and bequeath it as money, will not constitute a conversion: Davidson, Executrix, v. Bright, 267 Pa. 580, 585. In the present case we find no such clear and indubitable intent.

Passing to the contention of the physician and hospital that all of the debts, including their own, were

charged by the decedent's will on her real estate, the only support found for this position is in such cases as Alexander v. M'Murry, 8 Watts 504, Steel v. Henry, 9 Watts 523, and Seitzinger's Estate, 170 Pa. 531. In Alexander v. M'Murry, the testator, after devising a portion of his estate, provided, "all the residue of my estate, real and personal, I order to be sold by my executors". He then devised the proceeds of the sale between his two sons and then provided, "my just debts being first paid". In Steel v. Henry, the will gave to the executors full power to sell real estate for the purpose of paying debts and of carrying into effect the other provisions of the will. In Seitzinger's Estate, the testator devised his real estate to his executors to sell the same for the payment of debts, and directed that after the debts were paid the executors should convey what remained to various legatees. In all these cases it was held that there was no limitation to the lien of debts short of the period which would raise the presumption of payment. But, even in Seitzinger's Estate, it was pointed out (p. 537) that the principle announced in the two earlier cases had been rigorously limited to those cases where under the will no title passes to heirs, legatees, or devisees until full performance of the trust to pay debts.

In Agnew's Administratrix v. Fetterman's Executrix, 4 Pa. 56, Chief Justice Gibson pointed out that if a lien of debts was to continue without limitation under the principle laid down by the cases hereinabove cited the trust must not be an implied one, but that it must be express, precise, and clear. He also pointed out that in Alexander v. M'Murry and in Steel v. Henry the temporary charge of debts imposed by the law was supplanted by a permanent charge imposed by the testator. In Buehler's Heirs v. Buffington et al., 43 Pa. 278, 294, the court referred to the Alexander and Steel cases, and stated that these cases were qualified in Agnew's Administratrix v. Fetterman's Executrix,

supra. In the Buehler case the testator directed the sale of the residue of his estate and the application of proceeds to the payment of debts. The court held that such a clause has no other effect than to save the necessity of applying to the orphans' court for an order of sale to pay debts, and that such a clause was not sufficient to create a trust; and that the testator had merely dedicated his land for debts just as the law dedicated it.

In Trinity Church v. Watson et al., 50 Pa. 518, 522, 528, the court held that a general charge on real estate by devise for the payment of debts does not create a testamentary lien of unlimited duration. The court stated:

"No case brought to my notice, or of which I have any knowledge, has ever decided that a general direction to sell real estate for the payment of debts, not ascertained or identified, will extend the lien of these debts indefinitely, without suit or notice by filing a copy under the Act of 1834."

In Mitchell's Estate, 182 Pa. 530, it was held that in order to create a testamentary charge on real estate it must be found that such was the testator's intention and it must be disclosed by the will itself. It must be shown, not only that the debts were made a charge upon the land by will, but also that an express trust was made for their payment; because, unless such trust were created, the lien of the debts, though made a charge upon the land by the will, would be lost by statutory limitation.

Finally, in Krick's Estate, 342 Pa. 212, it was held that a mere direction by the testator to pay debts, accompanied by a power of sale of the real estate, does not effect a conversion, the order to pay debts adding nothing to what the law itself would have insisted upon.

It follows from the foregoing that there was no conversion of the real estate and that the debts did not constitute such a charge on the real estate as continued their lien without limitation. Inasmuch as the debts

due the physician and the hospital were not liens when the real estate was sold, these creditors have no claim on the real estate or on the proceeds thereof: Cooper's Estate, 206 Pa. 628. The proceeds of the real estate must, therefore, be applied first, to the payment of the Sennett judgment, which was a lien against the real estate when the testator died, and, secondly, to the Shulenberger judgment, which was the result of a timely continuation of the lien of his debt; and any balance must be awarded, under the will of the testatrix, to her daughter, Ilene O. Campbell.

One additional matter must be considered: The executor, in his statement of proposed distribution, proposed to pay the Sennett judgment, with interest thereon from January 15, 1942, to February 5, 1945, the latter date being one day prior to the filing of the account and statement. Where real estate is sold by an executor or administrator for the payment of debts by order of the court, interest on the debts payable from the proceeds ceases on the date of final confirmation of the sale: Roos et al. v. Fairy Silk Mills, 342 Pa. 81, 82; Carver's Appeal, 89 Pa. 276; Kier's Estate, 27 Pitts. L. J. 97; Ramsey's Appeal, 4 Watts 71; Lefever's Estate, 7 Lanc. 131. The sale in the present case was confirmed April 18, 1944; therefore, interest will not be allowed after that date.

And now, July 17, 1945, the account is confirmed and the objections to the statement of distribution are sustained. It is hereby ordered and decreed that the balance in the hands of the executor, $1,778.16, be distributed as follows:

To John Sennett, judgment no. 113, February term, 1939, entered January 14, 1939, principal $900 with interest thereon from January 15, 1942, to April 18, 1944, $121.95 .................. $1,021.95

To Earl B. Sober, prothonotary, costs on said judgment ...................... 3.75

640

To J. R. Shulenberger, judgment no. 153, February term, 1944, entered April 5, 1944, $577.95, and interest thereon from April 5, 1944, to April 18, 1944, $1.25 .. 579.20

To Earl B. Sober, prothonotary, costs on said judgment ..................... 6.50

To Ilene O. Campbell, sole devisee under decedent's will ...'................... 166.76