# Steel *against* Henry.

If a testator devise his real estate to his executors, to be sold, and directs the proceeds to be applied to the payment of his debts, he thereby creates a trust for the benefit of his creditors, and there is no limitation to the lien of such debts as regards his real estate thus devised.

If a judgment be obtained against the personal representatives of a deceased debtor, within seven years after his death, the lien of the debt is thus continued upon his real estate for twelve years, and if afterwards prosecuted with due diligence, will not be affected by lapse of time.

ERROR to the common pleas of *Mifflin* county.

William Henry's executors against John Brown and Ann Brown, late Ann Steel, executors of James Steel, deceased. This was a question about the continuance of the lien of a judgment upon real estate, and depended upon the following facts:

The original judgment in this case was obtained on the 6th day of October 1819, at the suit of William Henry against Ann Steel, William P. M'Clay, and Hugh M'Clelland, executors of James Steel, deceased, for the sum of 791 dollars 94 cents, *de bonis testatoris,*

with stay of execution until August 1820. A *fieri facias* was issued, No. 62 of November term 1820, and levied on two houses and two lots of ground on Market street, in the borough of Lewistown, adjoining lots of Mrs Jacobs and others. July 23, 1822, death of William Henry suggested, and William Henry, John Henry, and Francis Henry, executors, substituted plaintiffs, and the death of Hugh M'Clelland suggested, one of the defendants. *Alias fieri facias* against John Brown and Ann his wife, late Ann Steel, and William P. M'Clay, surviving executors of James Steel, deceased. No. 156 of August term 1822, levied on two houses and two lots of ground on Market street, Lewistown, adjoining Mrs Jacobs and others, as the property of James Steel, deceased. Inquisition and not condemned. *Liberari facias*, No. 124 of April term 1824, not executed. *Alias liberari facias*, No. 49 of August term 1824, not executed. *Pluries liberari facias*, No. 11 of January term 1827, executed and property delivered to E. W. Hale, Esq., plaintiff's attorney, to commence at the expiration of No. 6 of this term, at 99 dollars per year rent. February 28, 1829, *scire facias* issued, No. 100 of April term 1829, to revive the lien of judgment. No. 22 of January term 1819, and *quare executio non*. April 22, 1829, on motion of plaintiff's attorney, judgment, all payments to be allowed. *Fieri facias*, No. 27 of November term 1829, levied a half lot of ground on Market street, Lewistown, with a frame house and stable thereon erected, as the property of James Steel, deceased, being a part of former levy. Inquisition held and property condemned. *Venditioni exponas*, No. 83 of April term 1830, sold to Robert U. Jacobs, for 720 dollars. June 5, 1830, levy set aside on motion of defendant's attorney, for the reason that only the half lot of ground was levied, and the former levy included two lots.

*Fieri facias*, No. 69 of August term 1830, levied on lot of ground on Market street, with two dwelling-houses, &c. thereon erected. November 20, 1830, on motion of defendant's attorney, rule to show cause why the levy should not be set aside. March 22, 1831, rule made absolute, and judgment on *scire facias* opened, and the defendant let into a defence to show all payments made since the original judgments. April 9, 1834, defendants pleaded payment, &c. November 3, 1834, cause tried and verdict for plaintiff for 668 dollars 40 cents. November 8, 1834, judgment. August 6, 1835, on motion of plaintiff's attorney, rule to show cause why *alias fieri facias*, No. 156 of August term 1822, and all subsequent proceedings thereon should not be set aside. April 5, 1836, this rule was made absolute. *Scire facias*, No. 29 of April term 1836, to revive the lien of judgment, No. 100 of April term 1829; sheriff returns, served on William P. M'Clay, by handing him a copy, John Brown and Ann his wife not in his bailiwick. April 4, 1836, the service of this writ on William P. M'Clay set aside by the court, he having been previously dismissed. *Alias scire facias*, No. 3 of August term, 1836, to revive the lien of judgment. No. 100 of April term

[Steel v. Henry.]

1829, Benedict for defendants pleads payment with leave.  No. 10 of November term 1836, Mr Benedict withdraws his appearance and plea, and the court enter judgment *de bonis testatoris*, debt 748 dollars 82 cents.  *Fieri facias*, No. 95 of April term 1837, levied on a half lot of ground on Market street, Lewistown, with a house, &c. thereon erected, as the property of James Steel, deceased, being a part of former levy: inquisition, and property condemned.  *Venditioni exponas*, No. 30 of August term 1837.  August 10, 1837, on motion of Mr Benedict, attorney for the devisees of James Steel, deceased, rule to show cause why the levy and judgment, and all subsequent proceedings in this case, should not be set aside.

The house and half lot of ground adjoining Mrs Jacobs, and bounded as aforesaid, was the property of the said James Steel, deceased, in his lifetime, and now belongs to his devisees.  (See his Will, dated June 12, 1817.)  The remainder of the property above mentioned, and levied on as aforesaid, belongs to the devisees of his brother, John Steel, deceased, and the said James Steel died on the 1st day of June 1817.

If, from the foregoing facts, and the records and proceedings above mentioned and referred to, the court should be of opinion that the judgment in this case still remains a lien on the said house and half lot of ground, then the rule to be dismissed, and the sheriff directed to sell the property without further objection.  But if the court shall be of opinion that the judgment is not a lien on the said house and half lot of ground, then the rule to be made absolute, and the property not to be again levied on or sold by virtue of said judgment, and either party, or any one interested in the decision, at liberty to take a writ of error.

Will of James Steel, deceased.

" I give to my beloved wife Ann all my personal property (except the debts due me), to be held or disposed of by her as she may think proper, and in case the whole or any part thereof should be sold for the payment of my debts, then so much as is thus sold to be made up to her out of my real estate.  I give also to my wife Ann, out of my real estate, one hundred pounds annually, during her natural life; and in case the rents, issues, and profits of my real estate, after my just debts are paid, should not amount to one hundred pounds per annum, then my will is that so much of my said estate be sold as may be necessary to make the said hundred pounds per annum, by vesting the proceeds of the sale in some productive fund, or by putting the same to interest.  And further, in case the said hundred pounds per annum can be made as aforesaid, without a sale of the house and lot in Lewistown, in which I now live, then I give also to my wife Ann the rents, issues, and profits of the said house and lot, during her natural life, in addition to the hundred pounds per annum above given.  I give to Catharine Evans, the sister of my wife, a suit of mourning.  I give also to the said Catharine Evans, six hundred dollars, to be paid out of the lands near

IX.—2 U

[Steel v. Henry.]

Lake Erie, in which I am concerned with John Brown, in case that sum should come to my estate from the said lands, when the titles are settled.

" I give to my executors, hereinafter mentioned, and to the survivors or survivor of them, full power and authority to collect all debts due me, and to sell or convey the whole, or any part, of my real estate, at such times and upon such terms as they may think most proper, for the purpose of paying all my just debts, and of carrying into effect the provisions of this my will.

And it is my will, that at the decease of my wife Ann, all that remains of my estate, either real or personal (except her household and kitchen furniture and wearing apparel), shall go to the heirs and legal representatives of my brother Allen Steel, of Newcastle county, in the state of Delaware, to be distributed among them according to the provisions of the intestate laws of Pennsylvania.

" And lastly, I nominate and appoint my beloved wife Ann Steel, and my friends Hugh M'Clelland and William P. M'Clay, or the survivor or survivors of them, to be the executors of this my last will and testament."

The court below (Burnside, president), rendered a judgment for the plaintiff.

*Benedict,* for plaintiff in error, cited 4 *Watts* 344; 2 *Watts* 53; 1 *Watts* 9; 4 *Watts* 13; 1 *Penn. Rep.* 481; 1 *Watts* 393.

*Hale,* for defendant in error, cited 2 *Penn. Rep.* 94; 7 *Watts* 224; 8 *Watts* 504.

The opinion of the court was delivered by

KENNEDY, J.—The only question presented by the facts of the case, as stated for the opinion of the court below is, whether the real estate of James Steel, the testator of the defendants below, which, upon his death, became bound by operation of law, and also by his will, for the payment of his debts, among which was the debt owing by him to William Henry, the testator of the plaintiffs below, be still bound or not for this debt. The court below being of opinion that the debt still continued to be a lien upon the real estate, rendered a judgment in favour of the plaintiff below. But the defendants there being dissatisfied with the decision of the court, have, by writ of error, brought it here. They claim that the lien of the debt upon the real estate of their testator has become extinct through lapse of time, and the neglect of the creditor and his personal representatives to keep it alive, by suing out a writ of *scire facias* for that purpose upon the judgment obtained for the recovery of the debt, in every successive term, thereafter, of five years from the date of the judgment, or, at most, from twelve years after the death of the debtor. In answer, however, to this, it may be observed, in the first place, that the debt having become, the instant that the debtor died, a lien, by operation of law, upon the

[Steel v. Henry.]

real estate which he left, would have continued to be so without limitation until paid, had it not been for the act of 1797, which limited the lien so created to a period of seven years after his death, unless a suit were commenced within that time, and *duly prosecuted,* for the recovery of the debt. But a suit was commenced, and a judgment obtained thereon for it, within less than two and a half years after the death of the debtor. Then, according to the decisions of this court, this of itself, without more, was sufficient to continue the lien for a period of twelve years from the debtor's death. But, besides this, the judgment so obtained, was not suffered to sleep, at any one period of time, up to the year 1830, so much as two years and a half, without a proceeding upon it, either by execution to enforce the payment of it, or a *scire facias* to revive it. Then the defendants, on the 20th of November 1830, arrested the proceeding of the plaintiffs to have execution of the judgment, by obtaining a rule on the plaintiffs to show cause why a seizure of the real estate of the debtor, made under a previous *fieri facias,* sued out on the judgment, should not be set aside. On the 22d of March 1832, this rule was made absolute by the court, and at the same time, on the application of the defendants, the judgment obtained last on a *scire facias* was opened, so as to let the defendants into a trial to show payment of the original judgment. By this order all further proceeding to have execution of the judgment was necessarily suspended until the question of payment could be tried, which was not until the 8th of November 1834, when, upon a trial of an issue joined on the plea of payment, put in by the defendants, a judgment was obtained in favour of the plaintiffs for 668 dollars 40 cents. Upon this judgment a *scire facias* was issued to April term 1836, and then an *alias* again to August term in the same year, upon which a judgment of revival was obtained at November term 1836. Upon this last judgment a *fieri facias* was sued out to April term 1837, and delivered to the sheriff of the county, who thereupon returned a seizure of the real estate belonging to the debtor at the time of his death, which was followed by suing out a writ of *venditioni-exponas* to the succeeding August term, when a rule, upon the application of the devisees (that is the defendants and some others, perhaps,) of the debtor, was granted by the court on the plaintiffs, to show cause why the levy and judgment, and all subsequent proceedings in the cause, should not be set aside. This last order of the court seems to have produced the case, stating the facts, upon which the court below rendered judgment, made with a view to have the question, already mentioned, finally settled, before a sale of the estate should be made.

This court, in the case of Penn *v.* Hamilton, 2 *Watts* 53, in giving a construction to the act of 1797, limiting the lien of a debt of a deceased debtor upon his real estate to a period of seven years from his death, unless a suit were commenced for the recovery of it within that time, and *duly prosecuted,* held, in order to determine

[Steel v. Henry.]

what should be deemed a *due prosecution* of the suit so commenced, that the requisites of the act of 1798, for continuing the liens of judgments obtained against debtors themselves, upon their real estates, beyond the term of five years from the dates respectively of such judgments, might be taken and applied as a rule of decision. Consequently, then, whatever would have been sufficient, under this latter act, for continuing the lien of a judgment obtained against a living debtor, upon his real estate, would be equally so for keeping alive the lien of a debt against a deceased debtor's real estate, after a judgment shall have been obtained against his personal representatives for the recovery of it.

But I apprehend that, under the construction given by this court to the act of 1798, the proceedings had upon the original judgment in this case, would have been all-sufficient to have preserved and continued the lien of it upon the real estate of the defendant, *if it had been a judgment against the debtor himself.* The principle of the act of 1798 was not applied to the case of Penn *v.* Hamilton, because it was thought that the legislature intended that it should extend to such a case, or to original judgments obtained against the representatives of deceased debtors, but was adopted by the court, and applied to it upon the ground of analogy, and its furnishing a reasonable rule, as it was conceived, by which it might be ascertained, whether the proceedings upon a judgment have been *duly prosecuted or not,* in order to obtain execution of it. The acts of 1827 and 1829, relative to the liens of judgments, and prescribing the mode to be observed and pursued with a view to continue such liens in force, have no application to judgments obtained against the personal representatives of deceased debtors; and not being very reasonable in some of their provisions, as regards the continuance of the liens under judgments obtained against the debtors themselves, it is therefore not very probable that courts will ever be disposed to extend their principles to cases not falling within either the letter or spirit of these acts.

It is not necessary, however, to decide the question raised in this case upon the ground thus presented, because there is a second ground upon which, according to the decision of this court in Alexander *v.* Murray, 8 *Watts* 504, it is to be determined, clearly, in favour of the plaintiffs below. The testator of the defendants below *charged by his will* the debt in question, as also all his other debts, upon his real estate; and in case his personal estate should prove insufficient to meet the payment of them, he also directs that his executors shall sell his real estate, and out of the money arising therefrom, first pay all his debts remaining still unpaid; and not until after his debts shall be paid does he devise any portion of his real estate, or bequeath any part of the proceeds arising from a sale thereof to any one. Thus the debt in question became a lien upon the real estate of the testator without any limitation annexed, either by law or by the will. The authority, moreover, given by the will to the

[Steel v. Henry.]

executors to sell the real estate, and with the proceeds thereof to pay the debts in the first place, created a trust, which they, after having made probate of the will, and taken letters testamentary thereon, were bound to exercise and discharge according to the tenor and effect of the will. This, however, they neglected to do, and the widow, who is here one of the defendants, with her present husband, being executrix, jointly with two others, of the will, notwithstanding their violation and disregard of the trust, is attempting now to have the real estate discharged from the payment of the plaintiff's claim, without paying any portion of it whatever. The widow, it is true, has a considerable interest in the real estate, but neither she, nor any of the devisees or legatees can claim any thing under the will, even according to its tenor, until the debts are all paid. To decide, therefore, that the claim of the plaintiffs below has ceased to be a lien upon the real estate of the defendants' testator, would in effect be preferring the claims of his devisees and legatees to those of his creditors, which would be in direct contradiction to the express direction of his will. This can not be, for it would not only be contrary to every principle of law, justice, and equity, but would be permitting the defendants below to take advantage of their own wrong, in not having exercised the power and discharged the trust according to the tenor of the will, and, in fact, giving them what they had no claim to, either in law or equity. In Alexander v. Murray, the defendant had some appearance of equity on his side; but here, the defendants below are without even the slightest colour of it. We therefore think, that the court below were right in giving judgment for the plaintiff.

Judgment affirmed.