## DENEGRE v. HAUN.

1. HOMESTEAD: WAIVER BY CREDITOR. A homestead may be sold to satisfy a debt of the owner contracted before the enactment of the homestead law, after the other property of the debtor, not exempt from execution, is exhausted; but a delay by the creditor in enforcing the collection of his claim, during which, all the other property belonging to the debtor, and subject to execution, is alienated, either voluntarily or by judicial sale, for the satisfaction of other debts, does not affect his right to subject the homestead to judicial sale, for its satisfaction.

2. SAME. LOWE, J., holds that the requirement of the statute, that all other property of the debtor, subject to execution, shall be exhausted, before a sale of the homestead, is directory, merely; and that a failure on the part of the officer to comply with it, does not affect the title of the purchaser of the homestead, at judicial sale.

*Appeal from Clinton District Court.*

WEDNESDAY, DECEMBER 10.

ON the 13th September, 1857, James D. Denegre, the plaintiff and appellant, recovered judgment in the District Court of Clinton county, against William G. Haun & Co., for the sum of $1,165.81; and on the 8th of May, 1848, the same plaintiff recovered, against the same defendants, another judgment, for the sum of $601.35. On the 19th of September, 1854, the plaintiff brought his action, in the same court, on these judgments, and recovered a new judgment, for the sum of $2,487.07. While the first two judgments were in force, the defendant had a large amount of property in addition to that now in controversy. Execution was issued on the judgment rendered in 1854, and was returned *nulla bona*. This property was then levied upon, and sold to the plaintiff. After receiving the Sheriff's deed, he brought his action of right, and the defendant resists, claiming that the property is his homestead, that he is the head of a family, residing on the same; and that the other property which he owned, upon which these judg-

ments were liens, was not first exhausted, before taking the homestead. Judgment was for the defendant, and the plaintiff appeals.

*Grant & Smith* for the appellant.

I. The court erred in adjudging that the first two judgments were not revived by the judgments of 1854. *Sprott* v. *Ried*, 3 G. Greene, 491; *Corielle* v. *Doolittle*, 2 Id., 385; *Humphrey* v. *Beeson*, 1 Id., 199; *Phillipps* v. *Coffee*, 17 Ill., 154; *Dougherty's Estate*, 9 Watts & Serg., 189; *Treasurer* v. *Foster*, 7 Verm., 52; Arch. Pr., 76; *Trevor* v. *Ellenberger*, 2 Pa., 94; *Clippenger* v. *Miller*, 1 Id., 64; *Penn* v. *Hamilton*, 2 Watts, 53; *Bank* v. *Fitz Simmons*, 3 Binn., 359; *Ebright* v. *The Bank*, 397; *Pennock* v. *Hart*, 8 Serg. & R., 369.

II. The debt was contracted prior to the enactment of the homestead law, and the Legislature has no power to exempt a homestead from execution for antecedent debts. *Howard* v. *Bigbee*, 24 How., 461; *Quackenbush* v. *Danks*, 1 Den., 128; Sedg. Const. & Stat. L., 195; *Johnson* v. *Burrell*, 2 Hill, 238; *Bailey et al.* v. *The Mayor, &c., of the City of New York*, 7 Hill, 146; *The People* v. *Carnall*, 2 Seld., 463.

III. The Sheriff's return is in writing, and cannot be contradicted by parol; and irregularities committed by him will not vitiate the sale or affect the purchaser's title. The Statute, as to prior debts, is simply directory. *Brooks* v. *Rooney*, 11 Geo., 423; *Newton* v. *The State Bank*, 14 Ark., 9; *Anderson* v. *Clark*, 2 Swan, 156; *Dill* v. *Penn*, Id., 561; *Hancock* v. *Metty*, 15 Tex., 205; *Kendrick* v. *Rice*, 16 Id., 254.

IV. The delay in enforcing the lien could not affect its validity. It was not destroyed by the alienation of other property. *Watts* v. *Kinney*, 3 Leigh, 293; *Turner* v. *Law-*

rence, 11 Ala., 426; *Addams* v. *Heffernan*, 9 Watts, 529; *Renner* v. *Phillips*, 9 Watts & S., 18; *Wells* v. *Baird*, 3 Penn. S. R., 351; *Kriegmaker* v. *Brown*, 14 Id., 274; *Steel* v. *Henry*, 9 Watts, 523.

*Cook & Drury* for the appellee.

I. The judgment rendered in 1854 was not a revivor of the judgments on which it was founded. *Isaacs* v. *Steel*, 3 Scam., 104; *Morgan* v. *Smith*, 11 Ill., 194; *Vredenburgh* v. *Snyder*, 6 Iowa, 40.

II. The exemption of a homestead relates only to the remedy, and does not impair the obligation of a contract. *Helfenstien & Gore* v. *Cave*, 3 Iowa, 288; *Bronson* v. *Kinsie*, 1 How., 311; *McCracken* v. *Hayward*, 2 Id., 608; *Gantly's Lessee* v. *Ewing*, 3 How., 707.

III. The individual property of a member of a firm cannot be subjected to the satisfaction of copartnership debts, until the copartnership property is exhausted. *Morrison* v. *Kent*, 15 Ill., 193; *Hubbell* v. *Perrin and Hinkle*, 3 Ohio, 288; *Wilder et al.* v. *Keeler et al.*, 3 Paige Ch., 167; *McColloch* v. *Dashill*, 1 Har. & Gill, 96; *Adams et al.* v. *Paige et al.*, 7 Peck, 542; *Pierce* v. *Jackson*, 6 Mass., 242; *Fisk et al.* v. *Herrick et al.*, Id., 271.

IV. The plaintiff slept ten years; allowed junior judgment creditors to take property on which he had the first lien; allowed mortgages to be made without complaint. He cannot, after this neglect to subject property upon which his judgments were a lien and levy upon and sell the homestead. Code of 1851, § 1249; 14 Me., 312; *Paxton* v. *Freeman*, 6 J. J. Marsh., 234; *Green* v. *Marks*, 25 Ill., 221; *Deere* v. *Chapman*, Id., 610.

LOWE, J.—The prime and chief difficulty in this case is, in separating from it the mass of foreign matter and questions in which the learning of counsel has invested it.

The real points in the case are few, simple and by no means difficult of determination. The action is Right, founded upon a title derived from a judicial sale. Counsel for the defense introduce and press in argument a number of collateral questions which have no appropriate place in the cause, and which we may dispose of *in limine.*

For instance, it is stated that the judgment under which, and to satisfy which, the property was sold, was founded upon two other judgments obtained in the years 1847 and 1848; and that these judgments were therefore merged in the latter, and the lien created upon the property of the defendant, by virtue thereof, is discharged. Conceding this to be the legal consequence of such a proceeding, we ask, what of it? How does it benefit the defendant? No question of liens or the priority of liens between creditors, is made, or can arise in this case. Again, the question whether the homestead law affects the contract or pertains alone to the remedy, comes in for a large share of the discussion. The unimportance of this question is apparent from the fact that the law is framed to save all antecedent debts. Still again, it was argued, that in 1852, the defendant Haun mortgaged all his property, including that now in controversy, to one Milligan, who assigned to one Thatcher; that subsequently, in foreclosing this mortgage, Denegre, with a large number of other incumbrancers, were made parties; that Denegre, the plaintiff in this suit, failed to appear, but made default, and a judgment of foreclosure was entered, and this circumstance is supposed to have concluded Mr. Denegre in some way, but in what way, and to what extent, is not specifically stated. Certainly, it did not supersede his judgment or render it nugatory. It may have had the effect to postpone it to that of the Milligan-Thatcher decree. But this is no reason why Denegre should not have his judgment satisfied, if he can find property liable to be seized. And so, with regard to some

other collateral questions equally remote and immaterial, which it is not necessary to refer to. The land in contro-versy was sold by the Sheriff, on an execution which had regularly issued upon a judgment rendered in favor of the plaintiff against the defendant, on the 19th day of Sep-tember, 1854. The judgment, levy and Sheriff's deed, being regular or at least unimpeached, the purchaser had a right to depend upon these, and in exhibiting the same on' trial, makes for himself a *prima facie* right to recover in this case. The defendant, however, claims that the *locus in quo* was his homestead, and therefore exempt from levy and sale. The record shows that the debts for which the judg-ment was rendered were contracted prior to the passage of the homestead law. In such a contingency, the said law declares in terms that the homestead may be sold on execution, to supply a deficiency remaining, after exhaust-ing the other property of the debtor which is liable to execution.

The defendant, anticipating perhaps that he would not be able to protect his homestead from the payment of ante-cedent debts, places his defense, especially in argument, chiefly upon the ground that the officer did not first exhaust the other property of the defendant. But we think this position is unsustained by the facts in the record. At the time of the issuing of plaintiff's execution, under which he now claims title to the premises in controversy, it is conceded that there were unsatisfied judgments against the defendant to the amount of some $30,000; that some of these judgments were anterior, and some subsequent in point of time, to the date of plaintiff's judgment, rendered in September, 1854; that on some of these judgments, executions had been returned *nulla bona*, and that a similar return had been made on two executions that had pre-viously issued upon plaintiff's last judgment; that the property of defendant, subject to execution, had been sold

by Milliken, under his mortgage, given in 1852, to secure the payment of $8,262, and the judgment of Doan, King & Co., obtained in the same year; that the facts disclosed by the record, show that Haun had no property upon which a levy could be made at the date of plaintiff's execution, except, perhaps, eighty acres, of which the forty acres now in controversy were a part; and the other forty, agreeably to the return on the execution, was sold first, without obtaining a sufficient amount to satisfy the debt.

Admitting all this to be true, the defendant nevertheless contends that the judgment under which the plaintiff sold and purchased the property was founded on two other judgments, rendered in 1847 and 1848, upon promissory notes executed and delivered in 1846; that they operated as liens upon all the real estate which he then had, and that although he had an ample amount to satisfy said judgment, aside from his homestead, the plaintiff neglected to levy upon and exhaust the same; that a failure to do so now precludes him, in law, from selling the homestead, although his claim may ante-date the law granting the same. This ground of defense possesses little merit, and derives no support from the law. It is true, in our opinion, (as held in the case of *Purdy* v. *Doyle et al.*, 1 Paige's Ch., 558,) the plaintiff lost his lien under his first judgments, by the character of the proceedings which he adopted in obtaining his last judgments, on the 19th of September, 1854. But this is an immaterial circumstance. He is in no worse condition thereby than if he had brought no suit whatever on his notes till September, 1854; and would it be said in that event, that a failure to prosecute an antecedent claim to judgment, at maturity, so as to subject any personal property or real, which the debtor might have apart from the homestead, to its satisfaction, would impair the creditor's right to go upon the homestead? This effect does not, and ought not to, follow such delay. The indulgence thus

granted may affect the rights of the creditor, but it furnishes no ground of complaint to the debtor, who, taking advantage of the delay, sells or mortgages the property and pockets the proceeds; or it may be that it is taken to satisfy other incumbrances against him.   The plaintiff's judgment being valid, founded upon a claim antecedent to the passage of the homestead law, creating a lien that was still existing and unimpaired, he does not, by delay, lose his right to seize the homestead, if, at the *time* of his levy, the judgment debtor had no other property out of which the execution could be satisfied, and that too, notwithstanding, after the maturity of the claim, or during the pendency of the plaintiff's judgment lien, the debtor had an abundance of other property for that purpose.   These views, we think, are sustained by a fair construction of our statutes, and derive support from the following authorities: *Renner* v. *Phillips*, 9 Watts & Serg., 13, 18; *Addams* v. *Heffernan*, 9 Watts, 523, 529; *Wells* v. *Baird*, 3 Penn. St., 351, and *Turner* v. *Lawrence*, 11 Ala., 426.

The foregoing exposition of the questions made, disposes of this case adversely to the defendant, and the judgment will necessarily have to be reversed and remanded.

There is another principle, however, suggested and discussed by counsel for the appellant, which lies at the bottom of this case, is involved in the assignment of errors, and upon which the writer of this opinion believes the decision of the case at bar should be made mainly to turn.   In alluding to it, I speak for myself and not for my associates, who desire to express no opinion thereon at present, believing it unnecessary to do so.   I think otherwise, and will briefly state the point.

The power being expressly granted to sell the homestead to satisfy antecedent debts, the non-observance of the directory part of the law by the officer, in exhausting the other property of the debtor first, is an immaterial circumstance

in this controversy, and if it was not done, it would not, in this collateral proceeding, have the effect to vitiate the plaintiff's title, nor could it amount to a legitimate defense in an action of this kind. This precise principle or question of practice was settled by this court after a careful review of all the authorities (which were fully quoted,) in the case of *Cavender* v. *Heirs of Smith*, 1 Iowa, 307, upon a statute somewhat similar, and equally favorable to the defendant as. the one under consideration. The execution law of 1839; required the Sheriff to levy upon such part of the estate as the defendant should direct; and in the absence of such direction, the homestead of the defendant in the execution, should not be sold, unless a sufficiency of other property could not be found; and in all cases, the real estate of the execution defendant should be exempt from levy and sale until the personal estate of such defendant should be *first* levied upon and sold, unless such defendant should voluntarily authorize the sale, upon execution, of his real estate.

The case just referred to was an action of right upon a sheriff's deed, involving the homestead of the defendants. Their defense was that the defendant had given no directions or authority to sell the real estate, but that at the time it was done, there was a sufficiency of personal property to satisfy the execution, upon which the Sheriff had failed to levy or sell, &c. The court held that the foregoing provisions of the statute were only directory to, and not inhibitory upon, the officer authorized to sell, so far as the rights of purchasers, at such sales, are concerned. And they laid down the rule that in an action of right, where the plaintiff claims, under a sheriff's deed, made under the statute just referred to, the deed, if the officer had the power to make the sale, cannot be assailed by showing that the defendant in the execution, at the time of the levy, had other real estate and personal property; or that the property

sold was the homestead of the defendant and that he gave no directions to levy upon the property. If the officer failed to do his duty, the purchaser's title cannot be affected by the omission on the part of the officer, but such questions are, and must be between the execution defendant and the officer making the sale.

The general principle, in all such cases, is very well stated in the case of *The United States* v. *Arrdondo*, 6 Pet., 729. "Where power or jurisdiction is delegated to any public officer or tribunal over a subject matter, and its exercise is confided to his or their discretion, the acts so done are binding and valid as to the subject matter; and individual rights will not be disturbed collaterally for anything done in the exercise of that discretion, within the power and authority confirmed. The only questions that can arise between an individual claiming a right under the acts done, and the public, or any person denying its validity, are, power in the officer, and fraud in the party. All other questions are settled by the decision made, or the act done, by the tribunal or the officer," &c. The same general doctrine is laid down in 10 Pet., 449; 2 Id., 157; 4 Cranch, 328, and a number of State authorities, as will be seen by reference to the case first above cited; the object being to give the greatest stability to, and security in, judicial sales.

This cause is remanded and reversed.